International Inc. vs. International Longshoremen's Association at all 15 minutes for plaintiff 15 minutes to be shared by defendants. Ms. Cooley may proceed for the appellant. Looks like we need Appellee counsel at the table here first, right before we get going Whenever it's good for you Good morning, may it please the court My name is Lauren Cooley and I represent Midwest the appellant and I would like to reserve two minutes for rebuttal. Very well No one disputes that in the statute before the court Congress prohibited unions from deliberately Restraining a neutral in order to put pressure on the primary No one also disputes that the neutral international ships have been alleged to have been restrained When they were prevented from entering and leaving the port The issue that's left before this court is whether the unions can nonetheless escape liability on a motion to dismiss by using an intermediary to Restrain the ships and the answer is no I'm sorry, you finish up your opening Sure, I want to get right to your questions, your honor and what I was going to start with is that There's no limit in the text of the statute on the manner or mechanism that the unions used to achieve the restraint let's say Just hypothetically. So the ships are coming into the port. They're coming from Lake Erie, I guess, right? and Let's say hypothetically that they have to make a fuel stop for some reason to be able to get all the way into the port and the Union here instead of enlisting the support of the pilots They you know, they talk to the fuel vendors and say hey We're just really unhappy with the way we're being treated and we'd asked for your support Don't sell fuel to these ships that come in Is that is that a violation of this act here? And and so the vendors say you know what? We We stand with you on you know, some sort of like highly principled basis We think it's almost a human rights issue or whatever and we're not going to sell fuel to these people We're not we're not we're just not going to do it. Thanks for letting us know about the situation. Is that is that the Union? Restraining ships from coming in or is that just some independent actor making a decision that has the effect of the ships don't come in Yes, your honor and the two components to your question as I understand it one is what's the conduct? What's the Union doing that restrains and then also to what extent does that implicate speech or expression or no? I don't I'm not really at all talking about speech But what I'm talking about is a violent, you know, a third party makes a voluntary decision Not to provide a service which has the effect that the ships don't show up That the Union Forcing the ships not to show up. Yes, your honor and my hypo. Yes, your honor There may be a causation question in there where there are multiple causes But the Union's conduct only has to be a substantial factor and it is in that case It's like if I went out and put landmines in in the port and I in and then I walked away It is not my presence there that there are me physically restraining the ships It's it's it's the landmines arguably, but we would still say that I acted to restrain the ships I restrained the ships and and that is for good reason under the statute the statute prohibits the unions from intentionally targeting third parties the neutral ships But I think I mean you're kind of bringing in the the foreseeable consequences of one's actions, right? but I think I think it's got to be a an action a coercive action by the Union Before we start saying Okay, what are all the consequences of that the but what we would say though? Is that the the Union is perhaps using the the fact that the ships are dependent upon fuel? The the statute doesn't require the unions to go out and physically grab the ships and restrain them So the question is how are they accomplishing that restraint? And what this court's case law has said is that unions may must focus their activities on the primary What they cannot do is the primary here the primary here is Midwest There was a labor dispute between the unions and Midwest. There was no dispute with the neutral ships. That's undisputed It seems to me your your argument turns on or requires that there be an agreement between the Union and the pilots to distinguish this hypo because Normally when as I understand it when when the unions picket I mean, they're trying to persuade people that they're right and That that other people, you know should look Disfavorably and perhaps not buy something from from the from the employer, but they're not actually agreeing with the neutral Intermediary so to speak to Deny business to the employer, but here you're alleging that aren't you? So, isn't that the kind of the key to the case that there's an agreement that is it that is absolutely a Significant distinction that would take this outside of judge Catholic's hypothetical What we have here is an agreement to do with the statute says the unions cannot do an attempt for the unions to use an Intermediary to achieve what Congress has said they are not allowed to do and so to ratify the Union's theory would be to permit them to evade the statute in that fashion the Agreement itself is is conduct. There's there's a communicated their speech that is utter words are uttered but it is in fact the act of enlisting the advance help of The pilots that is is conduct and doesn't depend on the force of an idea in Wilhelm this court's decision The court was interpreting the same statute at issue That's in footnote 1 it's section 2b of this statute and the court held that Soliciting advance help from the secondary the neutral employers workers to staff a picket line was there was enough evidence that that was done to deprive that neutral of its workers and to shut the neutral down and That that was done in order for the neutral to pressure another party that with whom the Union had a dispute and the court Concluded and had that language in that decision about what the Union may do and what the Union may not do was that under the same Subsection yes, your honor the the my friend on the other side says it's a different subsection but if you look at footnote 1 the provision being interpreted is the prohibition against Coercing threatening or restraining a neutral in order to put pressure on the primary So that cases is on all fours in the sense that the unions have reached an agreement in advance with someone else to to restrain to do what they cannot do I Have your I'm not looking at your complaint at the moment, but I mean you have your bait The Union folks are basically picketing kind of they're out in the water and whatever. They're they're signaling Their unhappiness with Midwest I guess and I mean Was there really something we would call like a meeting in the month. I mean like a legal agreement with I Did you allege a legal agreement we did your honor we agreed an express or implied agreement that was what was obtained in advance and that this explains why this coordinated activity was so effective the the the the Union's Coordinated their water pickets which generally involved going out up on a pontoon boat When particular ships were coming and going that they wanted to trap at sea or trap at the dock And identifying those ships getting on the radio even talking to the pilot directly and and targeting undertaking a coordinated Campaign to ensure that these ships did not have a choice in the matter. These ships were at sea trapped with their cargo and crew There's no indication or suggestion here that have a choice in the matter. I'm not The you're saying the pilots the owner of the ship What are you saying? So the the neutral here are the international shipping companies that have that and the pilots are a separate entity Okay, so you you mean the owners of the ships or that's correct So their boats with their cargo and their crew are stuck out in in the lake or stuck at the port for weeks at a time There's no suggestion the Union's asked the ships asked their management to voluntarily support this effort What is alleged here is that the Union's? Went out and did exactly what Congress says you can't do and how were they going to accomplish that? I mean, how else would you do that? But you know have to go through the you know, an advance agreement with some other intermediary and so the the the statute doesn't permit the Union's to go hire an independent contractor to do what they're not a legend the complaint anywhere as to why the Pilots agreed to this. Do you know your honor? And do we not have isn't that part of the plausibility? Analysis of whether or not there actually is an agreement that you have to allege some Consideration or some reason why they would have entered into an agreement your honor I think it's plausible from the allegations in the complaint that it could have been it could have broke Well, it could have been a there for all we know there was a financial component This case is at a motion to dismiss. There's been you know Some written discovery exchange, but no deposition no discovery schedule was even in place So to at the outset conclude that Midwest can't attempt to prove its case or get that discovery would be to you know Give the workaround essentially to the statute anytime the Union's choose to outsource unlawful conduct But if I mean if you just say they had an agreement, I mean, that's just a legal conclusion Really, you have to sort of correct Give us some facts that plausibly allow one to infer that there was such an agreement yes, your honor and the facts that I would point to are the fact that the Unions every time the unions undertook this activity the pilots did what was was requested and that the It was essentially like clockwork That in order for and that the pipe at the end that the unions took credit as well and their press release and in their communications with the Port Authority that they had That there was with them that had blocked and had trapped the ships like doesn't allege that every ship was blocked, right? I mean there are some ships that got through we're allowed to it I believe it alleges or at least it Isn't can be inferred that every time the unions chose to target a specific international ship That the pilots complied and this blockade was in effect, but you're not alleging that Midwest was denied all ships So Midwest was at that time the only terminal for international ships, right? But there were some ships there may have been but but but it is the case that this activity made Midwest radioactive The international ships did not want to come and dock at Midwest when this was happening Ships went to New Orleans. They went to Cleveland. They went to Detroit. They avoided Midwest the blockade accomplished what it was intended to accomplish intermittent, right There were yeah, and the out and the complaint there are allegations of I think seven or eight throughout a you know a year and a half period but how do you deal with these cases where you know, you have a Shopping center where you're telling people not to buy things at the stores Sure, your honor de Bartolo is a First Amendment case involving core protected classic First Amendment speech leafletting to a general audience the consumer the public Advertising a or promoting a cadena First Amendment activity. Also, your honor. The picketing is construed as Having a conduct component that is not protected necessarily by the First Amendment DeBartolo and Safeco the decisions we've cited recognize that there is that picketing is different from speech DeBartolo the the First Amendment case law involves pure speech that about as Traditional of protected speech as you can have and expressly distinguished the conduct scenario picketing in that example What we have here is even more than picketing we have a concerted agreement a coordinated plan to coerce the neutral and That takes us back to the Safeco line of cases that we cite in our brief where when a union appeals to a third party when in order to coerce the neutral and that's reasonably likely to be successful and they're doing something that will Effectively shut down the neutral that that is coercion within the letter and purpose of the statute I see that my time has expired. Oh, I just Okay, I want to make sure that I understand your argument If it were the case where the union was Picketing which is their right and there were Certain pilots that said I don't cross the picket line And You know went back the their own decision Would that be a violation? Your honor if what you said it sounds like what you're describing is a traditional primary picket a picket that is Aimed at Midwest in fact and that is also directed to the general public The pilots are received that message in in the course of that picket that would be protected activity Okay, what we have here is different. Let me finish. Oh sure. I'm sorry the problem here is the allegation That there was an agreement That With the pilots that when they saw the pickets They would freeze the ships and that's the core of your case Absolutely, and you're saying that you pled enough That the case should not have been dismissed That is absolutely correct your honor and I would point the court to justice Stevens concurrence in a safe code decision which distinguishes between Conduct that elicits Automatic response to a signal and communication that elicits a reasoned response to an idea and The statute is designed to prohibit the former the conduct as you described which in this case was an agreement that was effectuated Prior to the picket and then also reinforced through the Union's conduct during the picket You know getting out on the pontoon boat getting on the radio and so on Thank you, all right y'all have your rebuttal Good morning your honors my name is John Sheridan for the defendant of Pili International Longshore Miss Association and the the issue in this case is that Unions are entitled to appeal to and persuade Basically any entity or any person to boycott an employer and when that Union The only exception to that Under the statute and it's a narrow exception is they are not entitled to appeal and persuade an employee of the employer So there's no dispute that the pilots here are not employees. It's very clear in the complaint that they are Employers or self-employed individuals independent contractors, so when the Union approached the pilots and Persuaded them that a boycott was something that they wanted to engage in that is completely legal completely lawful and Who makes the decision where the boats? Will go into port Where the boats will go into port it's the ship owners right the ship owners Are told by their shippers. I think you know I want to ship it on this vessel. That's going to Toledo so Yes, the ship owners make a decision to approach the you know probably coordinating with Midwest. We're going to come tomorrow If I understand correctly it wasn't simply the individual pilots Who decided? That they're going to join the boycott they coerced the ship owners and shippers To boycott Midwest because it was the only way they were going to get their goods to shore There's no you're not You're not contending that all of these shippers voluntarily agreed to boycott Midwest well the your honor one of the primary Tools that labor organizations have is boycotts whether it be Asking employer to boycott asking consumer to boycott and often when the consumer or the employer Makes the decision to boycott that hurts intermediary employers that affects even intermediary employers The yeah, but the key here there in your heart and what you're saying is it's a voluntary boycott What they're alleging is that They were coerced to boycott. Yes, your honor, but the the brain you know or restrained. Yes, your honor I understand what they're alleging from doing business, but for example in in this case this court in this in the store were case for example there was a Primary dispute with a television channel the the unions of represented the employees of the television channel went out to Different businesses and said we're going to ask for consumer boycott of your business if you don't Stop advertising on this television channel so obviously the Individual businesses that advertise on the television channel are affected and negatively affected by that consumer boycott but this court held that that appeal to non-employees and persuading non-employees to engage in a boycott was a lawful Again there My colleague has suggested that there's no first amendment implications in this case, but there always are with the 8b4 statute well, I mean, but What they're suing you guys for is the conduct and I mean here You have ships that want to do business with Midwest right, that's that's common ground here for right and and so the Union Allegedly enters into some they say express or implied agreement with the pilots who it turns out under a statute have the power to prevent the ships from doing business as they want to and And so they're asking us to treat by reason of the agreement. They're asking us to treat The Union and the pilots as one for purposes of this statutory provision Because they're acting in concert Allegedly, and it's the Union's specific intention that These ships be prevented from doing business in the manner. They want to do business And so why I guess you know, why is it so unreasonable to say? Okay in this instance, we're going to say that the Union Did the Union restrained somebody from engaging in commerce Um, is there a case that for forecloses that there's a court where you answer how you wish well, and your your honor, I just wanted to say that, you know, my colleague was a Expressing that there was an express or implied agreement and I believe you asked, you know, that was the Conclusory there's no facts to allege an actual legal contract here There's no, I mean, there's been a lot of development of this record prior to this complaint They were up before the National Labor Relations Board One would assume that they would have put the detailed allegations of a contract in The allegations of complaint, but it's not there that could boycott it. There has to be a written contract Okay, but any sort of legal contract is what Judge Ketledge was asking and I don't think there's it. This is a Not it's an agreement in the most colloquial term It's just simply an acquiescence or a they've been persuaded to go with their usual Thought that they don't want to engage in a labor dispute and they don't want to support The management of labor dispute. I mean the the Coast Guard regulations require pilots to pilot ships in and out of Recognize that they don't have to Pilot as independent contractors as as free actors in the economy. They don't have to pilot if there's a labor dispute. When did they get? When did the pilots get their contract to pilot the ship When I did, you know that I I don't know I mean, I know the Coast Guard regulation says that they may and it's in our brief as a footnote says that they may agree to or elect not to Pilot the ship at any point in time that they become aware of the labor dispute So, I don't know how they get their contract. I mean what I'm sorry. Go ahead. No, I Totally get your point about the Union is entitled to persuade people not to do business with an employer Whom the Union thinks is acting inappropriately in some way But I mean here here the party persuaded I mean, this is what I guess makes this maybe a challenging case is that the party that the Union persuaded is Preventing someone else from doing business with I guess what you all call the primary Midwest And so that I mean, that's a different circumstance Materially different circumstance from the Union just persuading someone themselves not to do business. They're persuading someone who's now Restraining or interfering with someone else who wants to do business Yeah, but that's that's often the case It's certainly almost always the case with consumer boycotts the consumer boycotts The secondary and the secondary is harmed not because of anything these specifically they did but because of their relationship Help help me. I'm Bartolo or a store for example Going to the mall and saying we don't like the construction companies doing work in this mall We asked the consumer not to patronize any of the stores in this mall But but the consumer I mean that the party that ultimately would do business So you have you have the the primary the employer of the Union? Members. Yep, and then you have Someone who's going to decide whether to do business with the primary in the mall example The the customer is deciding not to do business There's no one who wants to do business with the primary who's being blocked From doing so as a result of the Union's activities here There is the ships want to do business with Midwest They're being blocked from doing so as a result they allege of an agreement between the Union and the pilots, okay, I mean the hypothetical Typically if somebody's picketing either primary or let's say a primary situation Suppliers vendors Teamsters with trucks will come and often will not cross the picket line And that will prevent equipment other items to be delivered to the primary the person who is Shipping those that equipment probably wants to get that equipment there or wants to get equipment out this is this is a tool that labor has used for decades to Interfere with the Primary and in this there's no allegations in this complaint. That's alleged that it's secondary picketing I mean, it's all about picketing around the primary site. So these are typical things that happen with the primary there's no allegations in a complaint that the secondary had any sort of Specific damages the allegations of the plane are all about the primary say I mean let's say there's a mall to build on judge Bush's Example and The mall employs, I don't know some you know, they have a some kind of Union workforce They're having a disagreement and the workforce persuades a bunch of third parties just you know other Kind of Confederates who are not part of the Union they're just sympathetic to to form a physical barrier or Something close to it in front of the mall entrance and they're sort of, you know in a line and They're making it very unpleasant. Maybe not physically preventing but making it kind of Extremely unpleasant to enter the mall Okay and so so people who just want to go in and buy a pair of jeans or something are showing up and there's all this chanting and commotion and People are de facto being turned away who want to do business. Is that a violation of the statute? I mean it is the Union restraining those people from Entering in that instance standard that sounds like a pretty standard picket line Right, if it's a if it the their third parties that are out here doing this Okay, so but what they're I mean people can join third parties. They have an agreement. They're like, yeah You help us out next time issue is who's the primary employer if the primary employer is Is the mall ownership right and then then yes The Union employees can picket and certainly anybody who wants to join a picket line can the Union employees aren't picketing they just get The well, I don't want to belabor it, but they get you know some Let's say there's some other unions who provide other services and they have an agreement Hey, you know you block the entrance for us and we'll do you a similar service down the road. Well, I mean the one specific thing that is prevented by this statute is Persuading employees of an employer. So when you say other unions makes all right You know, that is the one that and that no, that's just that's just limited and that's what the hypo brings down. Yes That's what I see my time job. You have a question The question yeah You're saying that the agreement the asserted the alleged agreement is irrelevant that in That doesn't exist legally. It's not a legal joint venture. There's no allocation a different question Okay, this is this is judgment on the plea. I mean, this is The case was dismissed on the pleading. So Are you saying that? It is Hypothetically if in fact the Union Had an agreement With the pilots that they would whenever they saw the picketing they would freeze the ships That that would in fact be legal that just a Gratuitous agreement to you persuaded us to boycott what you mean gratuitous agreement An agreement to boycott the ships. It's a boycott Yes, boycotts are legal if you don't ask anybody who is not an employee of an employer, that's a statute That's how it's interpreted. So you're saying that the agreement is is irrelevant That it's perfectly okay to go around asking third parties Not to do business With the I shouldn't say not to do business because It's okay to ask third parties to By their actions cause Other third parties not to do business with the employer. Yes, it's okay to ask Anybody other than an employee of an employer to boycott meaning not to do business with any employer even if that you know, even if that delivery doesn't happen, even if the ship doesn't get piloted even if the Equipment is not sent out. Yes, and even if that hurts the other neutral businesses If that's how you you persuade the non-employee to boycott and that's how boycotts work. Which are the cases that you Say state that most clearly Did their persuasive consumer boycott cases the Bartolo? So these aren't consumers consumers make independent decisions. I think I and I Submit to you that there's nothing in the complaint that these Individual independent contractors do not make their own independent. Well, but that's That's taking that's Rejecting the allegations. I mean, I I thought you were saying wait a minute. I thought you were saying that the agreement is irrelevant Let's us if there was an agreement Are you saying that it doesn't matter that it's still perfectly, okay to agree With another union or with whatever you want to call it of independent contractors Not to do business with the primary even if it has the effect of Barring other people from using from giving business to the primary I'm saying yes that okay, and then I said what are the cases that say that and You gave me consumer boycott cases and I said well They're different because consumers make their own decisions and then you went back to saying there was no agreement So what are the cases that will clearly tell us that it's perfectly, okay? To have an agreement that you're with independent contractors that they're going to boycott. I District decision talks about how in a situation where you're at the primary site is and There's all sorts of independent entities approaching whether it be vendors whether it be suppliers whether it be customers whether it be other employees of other Even in that case where it's primary and I submit there's nothing in the complaint that says this is not primary here Anybody who approaches to do business is Is open for an appeal to boycott appeal to stop doing business you know the purpose of a picket is to disrupt the business of the primary and If that gets disrupted the primary if it's a legal primary picket the primary cannot sue for damages That's what a boycott is. That's what the leverage is. That's how the labor or movement has used as its leverage for decades and when people agree To be persuaded to boycott that any employer Then that agreement Freely voluntarily entered into is is simply an independent acting within the flow of commerce and and the statute does not reach those independent decisions Okay, thank you. Okay. Appreciate your argument Okay We have more Appellant side Feel free to Good morning your honors may it please the court Jonah Grabowski on behalf of the International longshoremen's division Great Lakes District Council and local 1982 of the International longshoremen's how do you differ from How does your client differ from mr. Sheridan's client? In terms of the legal entities the local is a local entity the Great Lakes District Council is the intermediate body and then Like the archdiocese Basically and so what's your argument different than what? There's not there's not too much that's that's very different. Okay. Well, then let me ask you a question. I was thinking of Ask him, but I'll ask you. So it seems to me that That Midwest is relying upon 20 29 USC 158 B for to be And According to their brief they're saying it says it shall be an unfair labor practice for a labor organization or its agents to threaten coerce or restrain any person engaged in commerce or in an industry affecting commerce where an object thereof is Forcing or requiring any person to cease doing business with any other person? So I think their argument is that the pilots are the agents of the labor organization Therefore under this statute the pilots cannot threaten coerce or restrain any person Engaged in commerce or an industry affecting commerce, which are the ships Where an object is forcing or requiring that person the ships to cease doing business with another person, which is Midwest Seems like that that's their case So what am I missing? It's Our position your honor that there is no agency relationship between the pilots Okay, so what did they need to allege other than what they alleged? I think they alleged there's an agreement Yes, I think that the situation here is that in their their briefs they point to various portions of the second amended complaint suggesting that There was some instigation ratification or condoning of action. But what they were actually pointing to were Allegations of that relationship between the actual individuals who were Officials of the of the Union the District Council and local 1982 And so there wasn't an elaborate Allegation of an actual agency relationship. It was conclusory at best And so have any cases talking about what needs to be pleaded under Plumlee at all for this kind of situation I think there are a couple of different cases Basically There needs to be ratification by conduct. There's an 11th Circuit case Dowd versus ILA basically suggesting that There needs to be some ratification by conduct and there needs to be some allegation of a joint venture relationship between the parties and those Allegations are simply not present what relationship between the parties. Did you say? potentially a joint venture relationship There are There are a number of other cases to that that speak to that To that to that relationship I think the issue here is that there's just not enough in the complaint the second amended complaint to actually explain the relationship between the pilots and the unions other than the fact that there was a Alleged agreement. There's just no there's just a paucity of allegations that that there was any kind of relationship suggesting agency and That the unions were the principal But other than agency is it would you agree with me? That's the issue here. I mean, is there something else I'm missing? I think another important issue your honor is to take a step back and think about this case where it originated This is an a before B case, but that's the National Labor Relations Act we're here in federal court under section 303 of the Labor Management Relations Act because Midwest as the primary employer is alleging and has alleged it suffered quote-unquote massive damages As a result of a unfair labor practice committed by the unions, but importantly typically in the context of the National Labor Relations Board, there is A charge typically brought by a secondary employer. Usually it's the secondary employer who has suffered harm They're saying that you know, hey, we're not involved in this situation The union has a dispute with the primary employer and we're getting caught in the middle So hypothetically it'd be the shipping company say fine. Yeah, but the but the section 303 of the NLRA Authorizes private damages suits according to their brief for whoever is injured in his business or property So that seems to be not just secondary employers that could sue Be the primary. Oh, yes, your honor and all the only reason I bring that point up is because in the retail clerks case that That Midwest raises it alleges that in order for there to be coercion by the Union, even though it, you know appeals to a third party. So in this case the pilots that What happened is that the the secondary employer would would face, you know Financial ruin or some sort of you know, severe economic damages that would cause it, you know to go under in the bright, you know Something where the entire business would would cease to exist because you know, they're they're pushed in the corner. That's that's the coercion Yes, they're alleging that the ships were not able to dock in their second amendment complaint But nowhere in the second amendment complaint do they allege? And I mean this is important for purposes of a motion to dismiss that the shipping companies suffered any specific damages now I think maybe one can take it for granted But it's important to allege that there were damages suffered by the secondary employer for purposes of being able to establish coercion Well, I mean if we read the complaint in the light most favorable to the plaintiffs that would seem to be a fairly obvious inference that if the the freighters are just you know, sort of waiting in Lake Erie for any appreciable period of time that they're going to be costs that result to the Company that owns the ships and employs the the folks on the freighter. I think that's a fair point your honor I guess it just seems important that They rely so heavily on that case to say that there has to be damages by a secondary employer They're saying that is the the key of saying that that the unions caused Coercion because the secondary employer was suffered. It's more than just coercion the statute though. It talks about threatening or restraining or coercion any person and then with the object of Forcing or requiring any person to cease doing business You don't dispute that they see that the freighters ceased doing business Under the complete that was alleged in the complaint with with Midwest. No, no, okay So really we're looking at have they alleged enough to show either threatening Coercion or restraint. Yes, your honor. It's our position that they have not Okay, well Did the pilots Restrain the shippers from using the port or or coerce them not to Your honor it's my position that there wasn't no restraint coercion or threats by any party and if there was by the pilots then That's not the Union's problem. The Union was not Engaging in coercion threats or restraint. I think Midwest is arguing that If the pilots did somehow that can be imputed to the unions But our position is that under the variety of cases that we've cited in our briefs You know, you can appeal to the public and say, you know, we're engaging in a boycott You shouldn't do business and essentially the pilots had had you know said we agree with your position. We won't do business So yeah, I mean, I mean it seems like the dispute boils down here to on the one side You gentlemen are saying The Union's appealing to the public here and then the other side they're saying that the pilots are an agent of the Union And just because you agree with the Union doesn't make you an agent would be I presume what you're saying That's correct. If they were the if the pilots were doing this Based on an agreement with the Union just hypothetically Would that be a problem? Would that be a violation? If there was an agreement I think it depends on the nature of the agreement. Your honor. I don't think it's a straight yes or no There were a quid pro quo that might look a little different. Yeah. Hey, you know, we're gonna have our own Dispute next year and you guys, you know help us out Impeach this and that and help us now. I mean that might look a little different But I think to you to that point your honor there's some discussion about signal picketing in Midwest briefs, and I think we addressed it as well in ours, but That would suggest that maybe there was a pre-arranged situation but what we're arguing is that you can't have signal picketing when the Pilots were not employed by the The freight the the shipping companies. They're independent. It seems to be the key here that you couldn't do this if they were employees right If they were employees that might be a different situation your honor, but they're not so, you know, we don't really get into that All right, well we're way into the Yeah, you know, this is not really part of the record I probably shouldn't even ask this question, but I'm going to anyway on the pilots just How do these pilots do these pilots all and this is totally off the record? So maybe I should ask the question, but I will do the pilots Are they just our pilots just assigned to ports? Is that how how the or do you know anything about how the industry operates my my my unfortunately? I don't know quite as much to give you a satisfactory answer. I think that they do get assigned And they're essentially independent contractors But as co-counseling indicated they're subject to the various Coast Guard rules and regulations And so that might impact where and when I mean I know that you have pilots who just work in like Gary of some pilots who work in And like superiors all across the Great Lakes. Yeah, I just wonder if they could bounce from like from Toledo to Cleveland if they you know, don't have enough business in Toledo. They can go up to Cleveland and do whatever That may very well be okay. So they're just they're not tugboats. They're just leading the freighter They're like like airline pilots they can yes, they go to wherever the Equipment is and they drive it. They know how to drive it. That's exactly right. They're like they're like Are they driving the freighter as they go in? Really, but they're hopping on the ship like they're not there though. They didn't bring it They really know the robo. I imagine going out to actually swim your honor They know, you know where everything is in the harbor and right yeah, they have the expertise to I didn't know that was going on. All right, very good Okay, we'll hear rebuttal. Thank you. Thank you both for your arguments A few points first our position is that the unions are both directly liable for their own conduct That accomplished this restraint and also vicariously liable under a theory that the pilots were the agents but in either case We don't necessarily need to prove an agency for the first case because if they're independent contractors There's may not be enough control, but that would still violate the statute because what you have here is an agreement to intentionally Restrain a neutral third party violation agreement allows for direct liability. That's correct Okay, and then both an agency is only for vicarious. That's correct. Well, and we would we argue both should be Those both of those Theories should be viable for Midwest below a few responses to the case law. How would how would the pilots become the agents of the Union apart from an agreement It would be like the agreement is nest. It's not a stick. That's The agency is not a separate basis separate from the agreement. You have to have there's right your honor You could have an agreement that Doesn't have the level of control that you would see you would have an independent contractor agreement. Yeah I mean relationship Union doesn't control right the Union does not control these pilots You don't allege that they're under the control of the Union Do you we do at page ID 486 and page ID 489 that they were acting under the control and direction? What I mean is there what fact would support that that seems highly counterintuitive The Union Workers are controlling what these pilots are doing and your honor and to be clear We don't know what the evidence will show either way and so a fact that would allow me to infer that the Union in Indeed had such control over pilots. Yes, your honor. And that is that the each of these pickets produced the Response that meant that the unions were seeking that this coordinated campaign was so effective and so successful It is reasonable to infer from that that the there had been a prior agreement and that there had been an agreement for the pilots just equally consistent with the Union persuading some someone and engendering sympathy from someone who then Himself chooses to act in Accordance with the Union's interests first your honor if both of those things are reasonable inferences Then we should still be able to move forward with our complaint at this stage but second the Seeking the agreement to coerce the third party is prohibited And I would point the court to the Kroger case from from this court and the got free which case the Kroger decision And that it was actually short of an agreement But it involved appealing to the public in that case actually consumers to boycott a primaries good in that case It involved Kroger and the the unions had a dispute with the manufacturer of paper bags that were used at Kroger for bagging this was before modern plastic and reusables and the pickets were Were being held outside of Kroger and the court held that that conduct was So targeted at in fact Kroger and that by convincing consumers not to use Kroger's paper bags They were effectively convincing consumers to completely boycott Kroger that that was coercive conduct that violates section 2b What case was that? This is the Kroger decision. We've cited it in our briefing It's a Sixth Circuit decision that follows Safeco the retail store line of cases and it explains that when you're dealing with intentional targeted conduct Aimed at the secondary that gets beyond incidental effects at the secondary when we're not talking about an allegation of primary picketing Which one of my friends on the other side spoke about at length when we're talking about An intent to coerce a secondary and the reasonably likely Effects of the conduct of the unions are such that they threaten substantial loss that that is coercive conduct I Don't see how you can look only at the I think the effect is one of the prongs But I don't see how you can look only at the effect if you're talking about primary Picketing because they're always going to be people who will not cross a picket line Your honor the statute Does distinguish of course between primary and secondary our argument here is is this is secondary not primary it's directed at the At the ships the ILA concedes at page 18 in their brief that we've adequately alleged that that intent I don't understand that because It may have had that effect, but they're they're picketing at the site they're picketing at the employer's site We we alleged that the pickets were actually in some cases a mile away from Midwest stock and the ILA's brief acknowledges that The primary that a lot of these hard cases involve a line between primary and secondary picketing But that is a fact question that goes to the intent of the unions and there are multi-factor They are way beyond sort of any Property so to speak of Midwest when they're out in the ship Yancey or whatever is out there That's right your honor And if there was a question about whether there was primary for the second year first of all the unions didn't argue that below But in any event the that is in fact a fact question that would be developed on remand There's multi-factor tests one of which is the location of the picket But but there's no dispute here that we have adequately alleged the intent that would make it a secondary Picket rather than a primary picket and to judge Cutler's point the allegations are that this in this campaign Included picketing out in open water And so we're far beyond Midwest stock But I mean they might just be trying to persuade people out there as well there a picket is sort of a physical barrier to going into a certain place of business and That's not present here. Is that fair? There's no physical barrier. I mean that you need the pilot I get that but the union itself is not Presenting any physical barrier. They're just you know Getting that result with the pilots the Picketing has the coercive elements to it and in this case there was picketing But we're saying there's actually more than that and worse than that There there is an agreement, and there is a kind of coordinated targeted attack on the neutral party That goes beyond even being the ships being the ships correct All right, well, we belabored this for some time. It's a fascinating case and I see the freighters going by all the time In northern, Michigan we appreciate your questions. Okay. Thank you. Thank you both all for your arguments case to be submitted